IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF SOUTH CAROLINA
CHARLESTON DIVISION

| | |
|---|---|
| Michael London,<br><br>　　　　Plaintiff,<br><br>　　v.<br><br>The Boeing Company, Vice President of 787 Operations-Darrel Larson (in his official capacity), Senior Director of 787 Quality-Caroline Hilton McDougal (in her official capacity), and Jason Cross- Human Resources (in his official capacity),<br>　　　　Defendants. | C/A No.:<br><br><br><br>　　　COMPLAINT<br>　**Jury Trial Requested** |

　　　Plaintiff Michael London, by and through his undersigned counsel, asserts the following Causes of Action of Race Discrimination, Racially Hostile Work Environment, and Retaliation in Violation of 42 U.S.C. § 1981, Breach of Contract, and Breach of Contract with Fraudulent Intent against The Boeing Company, Vice President of 787 Operations-Darrel Larson, and Senior Director of 787 Quality-Caroline Hilton McDougal, and Jason Cross- Human Resources (in their official capacities) based on the following assertions.

## ADMINISTRATIVE CHARGE

Plaintiff has exhausted all administrative remedies and prerequisites prior to filing this lawsuit, including timeliness, deferral, and all other jurisdictional requirements necessary for the maintenance of this Action, as described below.

## JURISDICTION AND VENUE

1. The Court has jurisdiction over this action pursuant to 28 U.S.C. Sections 1331 and 1343 and 42 U.S.C. Section 2000e (5), this being a proceeding to enforce rights and remedies secured

under 42 U.S.C. Section 1981 and other Federal statutes. This Court also has pendant and supplementary jurisdiction over so much of this action as is based on state law.

2. Venue is proper in the Charleston Division, because the causes of action arose therein, the acts and practices complained of occurred there, and it is where Defendants do business and may be found.

## PARTIES

3. Plaintiff is an African American male and a citizen of the United States. The Plaintiff resides in Summerville County, South Carolina, within this Judicial District.

4. Defendant The Boeing Company, herein referred to as "Defendant Boeing", is a Delaware corporation authorized to conduct business in the State of South Carolina. Defendant maintains substantial business operations, including manufacturing and production facilities, within this Judicial District. At all times relevant to this action, Defendant employed Plaintiff and was responsible for the policies, procedures, acts, and omissions alleged herein.

5. Upon information and belief, Defendant Larson is a citizen of South Carolina and resides in this Judicial District.

6. Upon information and belief, Defendant McDougal is a citizen of South Carolina and resides in this Judicial District.

7. Upon information and belief, Defendant Cross is a citizen of South Carolina and resides in this Judicial District.

## FACTS

8. Plaintiff is a 50-year-old African American male who was employed with the Defendant Boeing for 27 years beginning on March 24, 1997, until his untimely termination on August

20, 2024. Plaintiff tirelessly advocated for the safety and quality of all Boeing aircraft and manufacturing.

9. The Plaintiff prided himself on being an exemplary employee. In fact, Plaintiff advanced to the level of Superintendent of Quality for 787 Delivery Operations, achieving success in Quality performance, as well as stellar peer and vendor ratings for outstanding work.

10. Due to such success as a 787 Quality Leader, Plaintiff was promoted to Director of Quality for the 787 Program at the South Carolina Delivery Center in Charleston, SC, in October of 2021; however, Plaintiff did not fully transition to the Charleston facility until April of 2022. This long transition period was due to the Plaintiff's critical expertise and influential performance on the 787 Program.

11. Upon Plaintiff's arrival at Boeing, South Carolina, Plaintiff had a respectful relationship with the former Vice President of the 787 Operations, Defendant Darrel Larson (WM). In fact, Defendant Larson publicly praised Plaintiff's performance during a year-end celebration with former BCA President, Stan Deal.

12. However, this working relationship changed drastically in early 2023 when the 787 Program received growing customer pressure to accelerate airplane deliveries.

13. As a result of a great influx of production, there were mounting final assembly defects in production.

14. Plaintiff's team quickly implemented a more robust set of roll-out inspections, which yielded a nearly 200% increase in finding upstream defects in aircraft production.

15. It was during this time that Plaintiff noticed that Defendant Larson began to initiate directives that were in direct contravention of Boeing processes and procedures for safety.

16. On numerous occasions, Plaintiff was pressured by Defendant Larson to shortcut protocols and procedures for safety and quality to meet scheduled deadlines. For instance, Defendant Larson insisted Plaintiff's team fuel incomplete aircraft prematurely, in direct violation of the safety and health of Plaintiff's team in order to meet a scheduled deadline for such aircraft. Additionally, Plaintiff received constant pressure from Defendant Larson to fly airplanes with larger-than-acceptable statements of work, based on agreed-upon 787 Program goals, which were only to fly aircraft with fewer than 110 open jobs. The Plaintiff adamantly refused to comply with Defendant Larson's requests when he felt people and product safety were at risk, despite Defendant Larson's insistence to abide by scheduled deadlines.

17. Defendant Larson continued to apply continuous and constant pressure on Plaintiff and his team to ship aircraft out on scheduled deadlines despite a majority of them not being able to be properly inspected by Quality before ticket submission.

18. Due to Plaintiff's refusal to carry out the unsafe demands of Defendant Larson, Plaintiff was met with retaliation and a racially hostile work environment immediately. In fact, Plaintiff was verbally threatened by Defendant Larson, who insinuated that Plaintiff would lose position in Quality when he stated, "I am going to have a heavy influence on whoever gets the Senior Quality Director role, and they will clean up Quality."

19. Shortly thereafter, in September of 2023, Plaintiff became a finalist for the Senior Director of 787 Quality position that became vacant.

20. To Plaintiff's shock and dismay, the position was awarded to Defendant Caroline Hilton McDougal (WF) despite Plaintiff's immense amount of qualifications. Plaintiff asserts that his denial of this promotion was directly related to his advocacy for aircraft safety and his refusal to abide by Defendant Larson's unsafe demands for aircraft production.

21. It was openly stated to Plaintiff that Defendants McDougal and Larson were good friends, demonstrating the disparate treatment of Plaintiff throughout the entire application process for the Senior Director of 787 Quality position. It was also during this time that Defendant Larson's threats to Plaintiff became a reality.

22. It was during this time that Defendant McDougal, who had a prior history of targeting African American employees in Operations and was reprimanded for such, began to undermine Plaintiff's authority on several occasions by alienating Plaintiff and circumventing Plaintiff's directives to his subordinate staff, and when Plaintiff began to experience racially disparaging remarks from Defendant McDougal concerning Plaintiff's speech, such as " your team does not like the way you talk or speak to them" furthering the hostile environment Plaintiff had to endure.

23. In addition, as reported to Plaintiff by one of his fellow counterparts, Defendant McDougal held several meetings to discuss Plaintiff's team and their future and current business while excluding Plaintiff from such meetings to circumvent and undermine Plaintiff's authority as a team leader.

24. In fact, Plaintiff was later excluded from all meetings and decision-making processes for his Quality Team. For example, Plaintiff had to take meeting notices from others' calendars, and Defendant McDougal routinely deferred to Plaintiff's Senior Managers to answer questions or concerns.

25. Furthermore, when Plaintiff partnered with Final Assembly to ensure supplemental inspections were in place to reduce Final Assembly customer inspection findings, Defendant McDougal halted all additional inspections by Customer Coordinators because Defendant McDougal thought additional inspections "weren't of value." Thereafter, Defendant

McDougal changed the organizational structure to remove Customer Quality Support and Customer Coordinators from Plaintiff's purview to align with Defendant McDougal's schedule and guidelines, effectively ostracizing Plaintiff from his responsibilities and his team. Additionally, Defendant McDougal eliminated processes with Quality Assurance Investigation to safely initiate, resolve, and close a customer item under FAA rules and guidelines.

26. Defendant McDougal's actions were deliberate and orchestrated to undermine and minimize Plaintiff's authority over Quality Control with the pretextual purpose of terminating Plaintiff for failed work performance.

27. Unfortunately, on August 20, 2024, to Plaintiff's shock and dismay, Plaintiff was called into a meeting with Defendant McDougal and Defendant Jason Cross (WM) (Human Resources) and was abruptly terminated for performance issues, despite there being no prior discussions of poor performance or disciplinary documentation with Plaintiff.

28. Plaintiff asserts that his termination was in direct retaliation for advocating aircraft quality and customer safety instead of aircraft deliveries and scheduled aircraft deadlines. But for Plaintiff's advocacy and support of aircraft safety and Race, Plaintiff would not have been terminated, as Plaintiff had demonstrated a high-performance record in every position he obtained within the Boeing Company with no formal write-ups or complaints.

29. Therefore, Plaintiff asserts that his termination was based upon Race, Retaliation, and a Racially Hostile Work Environment, all in violation of Section 1981 as amended.

**FIRST CAUSE OF ACTION**

*Race Discrimination, Racially Hostile Work Environment, and Retaliation in violation of 42 U.S.C Section 1981, against Defendants The Boeing Company, Vice President of 787 Operations*

*-Darrel Larson, Senior Director of 787 Quality- Caroline Hilton McDougal, and Jason Cross- Human Resources (in their official capacities).*

30. Plaintiff reiterates and fully incorporates each and every assertion set forth above as if repeated verbatim herein.

31. Plaintiff is a member of a protected class on the basis of his Race (African American).

32. Plaintiff alleges that Defendant Boeing, through its agents, Defendant Larson, McDougal, and Cross, initiated discriminatory and retaliatory practices against Plaintiff based upon his Race, including but not limited to:

    - Undermining Plaintiff's initiatives and directives for Quality and Safety Control through subordinate employees.
    - Placing Plaintiff in a hostile work environment that denounced Plaintiff's initiatives to produce safer and FAA-regulated aircraft.

33. Plaintiff was subjected to Race Discrimination, a Racially Hostile Work Environment, and Retaliation on the basis of his Race, resulting from racially hostile treatment by Defendants Larson, McDougal, and Cross, which Boeing condoned in violation of Section 1981.

34. Boeing, by and through its agents, began a pattern and practice of enabling Defendants' Larson, McDougal, and Cross' discrimination against Plaintiff while disregarding violations of aircraft safety and FAA rules and guidelines, which Defendants Larson, McDougal, and VP General Manager, Scott Stalker, were all well aware of.

35. Upon information and belief, Plaintiff's Caucasian colleagues of similar title, responsibility, and authority were not forced to be subjected to such racial hostility, racially disparaging remarks, and undermining of their directives as Plaintiff.

36. Furthermore, none of Plaintiff's Caucasian colleagues of similar title, responsibility, and authority were subjected to such hostile and racial treatment, and Defendant Boeing made no effort to protect Plaintiff from such an environment orchestrated by Defendants Larson, McDougal, and Cross.

37. Defendant Boeing was well aware of Plaintiff's concerns of aircraft safety, as he became a strong advocate of such despite contradictory and demanding directives from Defendants Larson and McDougal, who disregarded such protocols for production goals on numerous occasions for scheduled aircraft delivery deadlines. Moreover, Defendant Boeing's policies and procedures, for which Plaintiff relied, provided assurances that Plaintiff's concerns would be addressed. However, Defendant Boeing, as well as Defendants Larson, McDougal, and Cross, failed to follow through on those promises in any substantive or meaningful way. In fact, the Defendant, Boeing, breached its own policies and procedures through its Handbook.

38. Further, Plaintiff alleges that Defendant Boeing, through its agents, Larson, McDougal, and Cross, initiated discriminatory and hostile practices against Plaintiff that were reckless and wanton, including:

    a. Continuing to permit the deliberate undermining and retaliation of Plaintiff's authority at the hands of Defendants Larson, McDougal, and Cross.

    b. By continuing to allow the Defendant's racially hostile, usurpatory, and egregious practices while Plaintiff's similarly situated Caucasian colleagues were exempt from such treatment.

    c. Failing to address aircraft safety concerns, which Defendants were well aware of through Plaintiff's numerous concerns and safety initiatives, and the undermining of

      Plaintiff's authority to circumvent safety and air control protocols set by Plaintiff in accordance with FAA rules and guidelines.

    d. Making racially disparaging remarks against Plaintiff in regards to his communication with his Quality Team.

39. By knowingly allowing such blatant and pervasive racial hostility, retaliation, and discrimination to exist, Defendant Boeing effectively condoned the same; and Plaintiff's job performance and effectiveness were negatively impacted consequently.

40. Further, Defendant Boeing, through Defendants Larson, McDougal, and Cross, retaliated against Plaintiff for advocating aircraft safety protocols and creating initiatives to correct such violations of safety protocol and procedure, via Defendant Larson, McDougal, and Cross's discriminatory and racially adverse treatment of Plaintiff. Moreover, Defendants' retaliatory conduct towards Plaintiff occurred and/or intensified in a close temporal proximity to Plaintiff's advocacy for aircraft safety.

41. But for Defendant Boeing's conduct, by and through Defendants Larson, McDougal, and Cross, Plaintiff would not have been forced to endure Race Discrimination, a Racially Hostile Work Environment, Retaliation, and ultimately termination.

42. By failing to protect Plaintiff from the Defendants' racially motivated hostility and retaliation, Defendant Boeing acted with malice and reckless indifference to Plaintiff's federally protected rights set out under Title VII of the Civil Rights Act of 1964, as amended (42 U.S.C §2000, et seq., Section 1981).

43. As a result of Defendants' racially discriminatory conduct, accompanied by Plaintiff's continuous and ongoing exposure to the same, Plaintiff has suffered damages in the form of actual, compensatory, consequential, physical, mental, emotional, and other damages. Plaintiff

further believes he should be awarded actual and punitive damages against the Defendants due to their unlawful discriminatory treatment of Plaintiff under Section 1981.

**SECOND CAUSE OF ACTION**
*Breach of Contract as to Defendant The Boeing Company*

44. Plaintiff reiterates each and every allegation in the previous paragraphs as if set forth verbatim herein.

45. Plaintiff and Defendant entered into a binding and legal contract for employment with Boeing beginning February 2019, where Plaintiff was offered a temporary assignment at Boeing South Carolina (BSC), which was only supposed to be a three-month assignment, but BSC offered Plaintiff a permanent position as Superintendent of Quality for 787 Delivery Operations, which Plaintiff happily accepted. Plaintiff accepted the offer of employment and agreed to fulfill the duties of his position in exchange for valuable consideration, his salary, and the Defendant's guarantee that he would be protected from Racial Discrimination, Retaliation, and a Racially Hostile Work Environment.

46. Defendant maintained an employment Handbook and mandatory policies and procedures that included the Plaintiff's job description, which set out conditions under which the Plaintiff performed in an exemplary manner.

47. Plaintiff continuously and diligently worked for Defendant for 27 years and always put the needs, safety concerns, and the customers of Boeing first during his employment as Superintendent of Quality for 787 Delivery Operations and later Director of Quality for the 787 Program, despite the constant and continuous pressure from Defendants Larson and McDougal to disregard such safety concerns.

48. At all times during his employment, Plaintiff relied on the promises contained in the Defendant's Handbook, policies, procedures, and governing documents.

49. Defendant breached its employment contract with Plaintiff by failing to protect Plaintiff from Race Discrimination, Retaliation, and a Racially Hostile Work Environment at the hands of Defendants Larson, McDougal, and Cross. Defendant further breached its employment contract with Plaintiff when the Race Discrimination and Racially Hostile Work Environment that Plaintiff had to endure reached a new height when Defendant Larson and McDougal effectively ostracized Plaintiff from all his work duties and responsibilities as a Director of Quality for the 787 Program.

50. The Plaintiff relied on Defendant Boeing's reassurances that it would act in accordance with its expressed and implied policies and procedures regarding workplace conduct, anti-discrimination, the investigation of known violations, harassment, and other workplace policies and procedures.

51. However, the Defendant, Boeing, unjustifiably failed to perform its contractual duties by racially discriminating against Plaintiff, retaliating against Plaintiff for his advocacy for safety through its agents Larson and McDougal, as stated more fully above.

52. Defendant Boeing also failed to fully and completely investigate all aircraft safety issues in accordance with its own policies regarding safety standards, despite numerous members of Defendant's aircraft management team being fully aware of the circumvention of safety standards to meet production goals, including Defendant Larson and McDougal.

53. All of these actions breach the contractual anti-discrimination provisions with Defendant Boeing's Handbook (contract), its anti-discrimination and anti-harassment policies, workplace conduct policy, and other contractual policies and procedures.

54. Further, Defendant Boeing breached its contractual policies and procedures by failing to treat Plaintiff equally to its Caucasian employees as stated more fully above.

55. Defendant Boeing and its agents had a responsibility to ensure that Plaintiff would not be subjected to Race Discrimination, Retaliation, and a Racially Hostile Work Environment.

56. Instead, Boeing permitted its agents to not only discriminate against Plaintiff but also allowed them to retaliate against Plaintiff when he properly advanced safety protocols for aircraft over production deadlines. Moreover, Boeing failed to treat Plaintiff similarly to his Caucasian counterparts, all in violation of the contractual guarantees provided to Plaintiff by Boeing in its Handbook and other contractual documents.

57. As a result of the Defendant Boeing's breach of contract, the Plaintiff has suffered actual, compensatory, physical, mental, emotional, and consequential damages stemming from the breach and other such damages as are allowed.

**THIRD CAUSE OF ACTION**
*Breach of Contract Accompanied with Fraudulent Intent as to Defendant The Boeing Company*

58. Plaintiff reiterates every allegation contained in the preceding paragraphs as if set forth verbatim herein.

59. Defendant, by and through their agents, has failed to fulfill their obligation under their promissory and mandatory terms requiring good faith business dealing, which form a contract with Plaintiff beyond the at-will employment relationship.

60. Defendant, by and through its agents, has breached the terms thereof by reason of an intentional design to defraud Plaintiff.

61. Defendant fraudulently and untruthfully attempted to conceal its true motives for terminating Plaintiff by alleging Plaintiff had performance issues, despite no prior discussions of poor performance and disciplinary documentation like write-ups, which is an actionable

misrepresentation, after Plaintiff actively advocated aircraft safety over production goals and the directives of Defendants Larson and McDougal.

62. In fact, Plaintiff asserts that Defendant Larson and McDougal worked to undermine Plaintiff's authority and responsibilities to create a pretextual reason for Plaintiff's termination.

63. Upon information and belief, Plaintiff asserts that Plaintiff's advocacy for aircraft safety was a catalyst to the discrimination, retaliation, and hostile work environment Plaintiff had to endure.

64. As a result, Defendant's actions, Plaintiff has suffered damages in the form of lost wages, income, and benefits, emotional distress, mental anguish, loss of enjoyment of life, embarrassment, humiliation, as well as consequential and other damages.

65. Defendant's actions as set forth above were undertaken intentionally, willfully, wantonly, recklessly, maliciously, and with utter disregard for public policy, and the State and Federally protected rights of Plaintiff. Therefore, Plaintiff is informed and believes he is entitled to recovery of liquidated and punitive damages from Defendant.

## JURY TRIAL REQUESTED

1. Plaintiff requests a jury trial.

## PRAYER FOR RELIEF

1. **WHEREFORE**, Plaintiff prays that this Honorable Court declares that the Defendants The Boeing Company, Vice President of 787 Operations -Darrel Larson, Senior Director of 787 Quality- Caroline Hilton McDougal, and Jason Cross- Human Resources, actions complained of herein violated the rights guaranteed to Plaintiff and issue its judgment:

   a. Declaring the actions complained of herein illegal;

b. In favor of Plaintiff and against the Individual Defendants for all causes of action herein alleged in an amount which is fair, just, and reasonable, and for actual, compensatory, special, and punitive damages;

c. In favor of Plaintiff and against the Defendants for all causes of action in an amount which is fair, just, and reasonable;

d. Issuing an injunction enjoining Defendants, their Agents, Employees, Successors, Attorneys and those acting in concert or participation with Defendants, and at their direction from engaging in the unlawful practices set forth herein and any other employment practices shown to be in violation of 42 U.S.C. Section 1981 (Race Discrimination/ Racially Hostile Work Environment/ Retaliation), Breach of Contract and Breach of Contract Accompanied with Fraudulent Intent and the common laws of the State of South Carolina;

e. Awarding Plaintiff actual and compensatory damages for each Cause of Action contained herein as appropriate, which the jury should find appropriate as a result of Defendants' unlawful discriminatory actions taken as a result of Plaintiff's Race and other pled causes of action, including: physical and mental anguish, pain and suffering, harm to Plaintiff's economic opportunities (present and future), any back pay, front pay and future earnings with cost of living adjustments, prejudgment interest, fringe benefits and retirement benefits;

f. Awarding Plaintiff his costs and expenses in this action, including reasonable Attorney's fees, and other litigation expenses; and

g. Granting such other and further relief as may be just and necessary to afford complete relief to the Plaintiff as this Court may deem just and proper.

Respectfully Submitted,

  s/Donald Gist
Donald Gist (13098)
***GIST LAW FIRM, P.A.***
4400 North Main Street
Columbia, South Carolina 29203
Tel. (803) 771-8007
Fax (803) 771-0063
Email: dtommygist@yahoo.com

***Attorney for Plaintiff***

November 4, 2025